CLIMATOLOGICAL CONSULTING CORPORATION, Plaintiff v. STEPHEN M. TRATTNER, Defendant

No. 9128DC376

(Filed 17 March 1992)

1. Process § 9 (NCI3d) — out of state defendant — long arm jurisdiction

The trial court did not err in denying defendant's motion to dismiss for lack of personal jurisdiction on the basis of North Carolina's long arm statute where plaintiff was a North

CLIMATOLOGICAL CONSULTING CORP. v. TRATTNER

[105 N.C. App. 669 (1992)]

Carolina corporation which provided expert consulting on weather, defendant was an attorney residing in Maryland and practicing in Washington, D.C. who contracted with plaintiff for expert weather consulting in connection with an airplane crash, and plaintiff alleged that defendant failed to pay sums due for professional services rendered. Defendant made a promise to plaintiff to pay for services to be performed in North Carolina by plaintiff and plaintiff actually performed services for defendant within North Carolina which were authorized by defendant. N.C.G.S. § 1-75.4(5)a and b.

**Am Jur 2d, Process § 178.**

**Construction and application of state statutes or rules of court predicating in personam jurisdiction over nonresidents or foreign corporations on making or performing a contract within the state. 23 ALR3d 551.**

2. **Process § 9.1 (NCI3d)— out of state defendant—minimum contacts**

The requirements, of the due process clause for jurisdiction over an out of state defendant were met where defendant contacted plaintiff's president to engage plaintiff's services in connection with an airplane crash case; plaintiff accepted the offer and all services were performed in North Carolina; plaintiff's president offered, upon completion of the work, to perform additional services at a later time if the defendant's clients decided to pursue another related claim; defendant telephoned plaintiff's president in his North Carolina office to engage plaintiff's services; it is logical to conclude that defendant knew the majority of plaintiff's services would be performed in North Carolina; and defendant does not dispute that eighty percent of the work was performed in North Carolina.

**Am Jur 2d, Process §§ 186-188.**

**Construction and application of state statutes or rules of court predicating in personam jurisdiction over nonresidents or foreign corporations on making or performing a contract within the state. 23 ALR3d 551.**

CLIMATOLOGICAL CONSULTING CORP. v. TRATTNER

[105 N.C. App. 669 (1992)]

APPEAL by defendant from Order entered 8 February 1991 by *Judge Gary Cash* in BUNCOMBE County District Court. Heard in the Court of Appeals 12 February 1992.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Michelle Rippon, for plaintiff appellee.*

*Powell & Deutch, by John A. Powell, for defendant appellant.*

COZORT, Judge.

Plaintiff is a North Carolina corporation engaged in the business of expert consulting on the topic of weather. Defendant Trattner is an attorney who resides in Maryland and practices law in Washington, D.C. In 1985 defendant contracted with plaintiff for expert weather consulting in connection with an airplane crash involving defendant's clients. On 2 August 1989 plaintiff filed suit in Buncombe County Superior Court alleging that defendant and his clients failed to pay sums due for the professional services rendered. On 25 September 1989 defendants moved to dismiss the complaint for lack of personal jurisdiction and *forum non conveniens.* On 8 February 1991 the trial court granted the clients' motion, but denied defendant Trattner's motion. Defendant Trattner appeals.

The sole issue on appeal is whether the trial court erred in denying defendant's motion to dismiss for lack of personal jurisdiction. We affirm.

[1] We apply a two-step analysis in determining whether our state courts have in personam jurisdiction over non-resident defendants. "First, the transaction must fall within the language of the State's 'long-arm' statute. Second, the exercise of jurisdiction must not violate the due process clause of the fourteenth amendment to the United States Constitution." *Tom Togs, Inc. v. Ben Elias Industries Corp.,* 318 N.C. 361, 364, 348 S.E.2d 782, 785 (1986). The second step is the ultimate test of jurisdiction. *Id.*

N.C. Gen. Stat. § 1-75.4 (1983) provides in pertinent part:

A court of this State having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to Rule 4(j) or Rule 4(j1) of the Rules of Civil Procedure under any of the following circumstances:

* * * *.

(5) Local Services, Goods or Contracts.—In any action which:

    a. Arises out of a promise, made anywhere to the plaintiff . . . by the defendant . . . to pay for services to be performed in this State by the plaintiff; or

    b. Arises out of services . . . actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant; . . .

In his affidavits, defendant states that he contacted plaintiff by telephone in 1985 and hired him directly to perform consulting services. In an affidavit, the president of plaintiff corporation stated that defendant approved the price quoted for the services and that over eighty percent of the services were performed in North Carolina. From the facts presented in the record, we conclude that defendant made a promise to plaintiff to pay for services to be performed in North Carolina by plaintiff. Plaintiff actually performed services for the defendant within this state which performance was authorized by defendant. We find the transaction within §§ 1-75.4 (5)a. and (5)b.

[2] Our next inquiry is whether the exercise of jurisdiction over defendant is permitted by the due process clause of the Fourteenth Amendment of the United States Constitution. In *Tom Togs, Inc.*, a case closely analogous to the one at bar, the North Carolina Supreme Court stated:

    To satisfy the requirements of the due process clause, there must exist "certain minimum contacts [between the non-resident defendant and the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945) (quoting from *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342-43, 85 L.Ed. 278, 283 (1940) ). In each case, there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws; the unilateral activity within the forum state of others who claim some relationship with a non-resident defendant will not suffice. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40,

2 L.Ed.2d 1283, 1298 (1958). This relationship between the defendant and the forum must be "such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980).

. . . Where the controversy arises out of the defendant's contacts with the forum state, the state is said to be exercising "specific" jurisdiction. In this situation, the relationship among the defendant, the forum state, and the cause of action is the essential foundation for the exercise of *in personam* jurisdiction. . . . [F]or purposes of asserting "specific" jurisdiction, a defendant has "fair warning" that he may be sued in a state for injuries arising from activities that he "purposefully directed" toward that state's residents. *Burger King. Corp. v. Rudzewicz,* 471 U.S. 462, 471-78, 105 S.Ct. 2174, 2181-83, 85 L.Ed.2d 528, 540-41 (1985). . . .

* * * *

Although a contractual relationship between a North Carolina resident and an out-of-state party alone does not *automatically* establish the necessary minimum contacts with this State, nevertheless a single contract may be a sufficient basis for the exercise of *in personam* jurisdiction if it has a substantial connection with this State. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 478-79, 105 S.Ct. 2174, 2185-86, 85 L.Ed.2d 528, 545; *McGee v. International Life Insurance Co.,* 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *Goldman v. Parkland,* 277 N.C. 223, 176 S.E.2d 784.

*Tom Togs, Inc.,* 318 N.C. at 365-67, 348 S.E.2d at 786.

In *Tom Togs, Inc.,* plaintiff was a North Carolina clothing manufacturer and defendant was a clothing distributor incorporated in New Jersey with its principal place of business in New York City. At a showroom in New York, defendant's buyer examined clothing manufactured by plaintiff. The following day defendant gave plaintiff's independent clothing sales representative an order to forward to plaintiff for over $44,000 worth of merchandise. Upon receipt of the order, plaintiff accepted the offer by sending the merchandise to defendant within the specified time. Two weeks after delivery, defendant complained to plaintiff that the merchandise did not conform to the samples. Defendant returned the mer-

chandise to plaintiff, but plaintiff discovered that some of the merchandise was missing or damaged. Plaintiff then brought suit in Wake County Superior Court. Defendant moved to dismiss for lack of personal jurisdiction.

Analyzing the facts in *Tom Togs, Inc.*, the Court concluded that "the contract between defendant and plaintiff had a 'substantial connection' with this State . . . [and] defendant purposefully availed itself of the protection and benefits of our laws." *Id.* at 367, 348 S.E.2d at 787. The Court found the following facts to be significant: defendant made an offer to plaintiff whom defendant knew to be located in North Carolina; plaintiff accepted the contract in North Carolina; defendant was aware that the contract was going to be substantially performed in this State; and the shirts were in fact manufactured in and shipped from this State.

Similarly, in the case before us, we conclude that the requirements of the due process clause have been met. The record indicates that on 5 August 1983 defendant initially contacted plaintiff's president, William Haggard, to engage plaintiff's services in connection with an airplane crash case in which defendant was representing Joseph and Helen Ambrose. Mr. Haggard accepted the offer on behalf of Climatological Consulting Corporation and all services were performed in North Carolina. According to defendant, in 1984 upon completion of the work initially contracted for, plaintiff's president offered to perform additional services at a later time if the Ambroses decided to pursue another related claim against the United States Government. On 19 July 1985 defendant telephoned Mr. Haggard in his North Carolina office in order to engage plaintiff's services. Although we cannot conclusively determine from the record where the contract was made, we find it significant that defendant initiated contact at least six months *after* plaintiff completed work on the first case and Mr. Haggard indicated his company's willingness to assist defendant in any subsequent cases. Based upon his previous work experience with plaintiff and the location of plaintiff's offices, it is logical to conclude that defendant knew the majority of plaintiff's services would be performed in North Carolina. Defendant does not dispute that eighty percent of the services were performed in this state. From these facts, we conclude that the contract between plaintiff and defendant had substantial connections with this state and defendant purposefully availed himself of the protection and benefit of our laws.

EMPIRE OF CAROLINA v. CONTINENTAL CASUALTY CO.

[105 N.C. App. 675 (1992)]

In support of our conclusion, we note the State's manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by non-residents who seek services offered by North Carolina professionals. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79, 85 L.Ed.2d 528, 541 (1985). Although defendant has indicated there are three material witnesses located in Washington, D.C., this fact is counterbalanced by the fact that plaintiff's materials and offices are located here. North Carolina is a convenient forum to determine the rights of the parties.

The judgment below is

Affirmed.

Judges EAGLES and ORR concur.