WILLIAMSON PRODUCE, INC., Plaintiff v. J.H. SATCHER, JR., d/b/a J.H. SATCHER, JR. FARMS and WEYERHAUSER PAPER COMPANY, Defendants

No. COA95-476

(Filed 4 June 1996)

1. **Courts § 16 (NCI4th)— financing and marketing of South Carolina grower's peach crop in North Carolina—applicability of long-arm statute**

   Defendant South Carolina peach grower made a promise for plaintiff's benefit to pay for services to be performed in the State by plaintiff within the purview of the long-arm statute, N.C.G.S. § 1-75.4(5)(a), where a contract between the parties provided that plaintiff would advance operating capital to defendant and gave plaintiff the sole right to market defendant's peaches, and plaintiff marketed and sold defendant's peaches in North Carolina.

   **Am Jur 2d, Courts § 80.**

2. **Courts § 16 (NCI4th)— personal jurisdiction of nonresident defendant—sufficient minimum contacts**

   Defendant, a South Carolina peach grower, had sufficient minimum contacts to permit North Carolina to exercise personal jurisdiction over him consistent with the due process clause where plaintiff, a North Carolina corporation, initiated the original contact in South Carolina with defendant and secured the

original agreement following negotiations taking place entirely in South Carolina; the original contract between the parties provided that plaintiff would have the sole right to market defendant's crop for a percentage of the profits and would advance defendant operating capital up to a specified limit; on at least three occasions defendant contacted plaintiff requesting additional sums of money beyond that promised in the original contract; defendant also contacted plaintiff to secure assistance in procuring the necessary boxes for the crop; plaintiff agreed to pay a North Carolina manufacturer to make and ship boxes, on defendant's order, to defendant's farm in South Carolina; the parties installed a dedicated phone line to facilitate their communication; plaintiff's marketing and sales efforts took place almost entirely in North Carolina; and pursuant to the parties' agreement, plaintiff sent a representative to South Carolina to monitor packaging operations and sent trucks to South Carolina to pick up the peaches.

**Am Jur 2d, Courts § 80.**

Appeal by defendant from order entered 15 February 1995 by Judge G.K. Butterfield in Wilson County Superior Court. Heard in the Court of Appeals 31 January 1996.

Defendant Satcher owned and operated between 1,000 and 1,100 acres of peach orchards in and around Johnston, Edgefield County, South Carolina. Defendant Satcher did business with his son David S. Satcher under the name of J.H. Satcher, Jr. Farms (hereinafter "Satcher Farms"). In January 1994, plaintiff contacted defendant Satcher and offered to sell Satcher Farms' 1994 peach crop. William R. Williamson, representing himself as the owner and operator of plaintiff corporation, travelled to South Carolina to negotiate with defendant Satcher. The parties reached an agreement under which plaintiff would advance funds to defendant Satcher to cover production of the 1994 peach crop and plaintiff would then market Satcher Farms' crop, acting in the nature of a commission merchant for the sale of the peach crop. Plaintiff ultimately loaned defendant Satcher a total of $292,000.00. In addition, a special telephone line was installed between plaintiff and defendant Satcher to facilitate communication between the parties.

As of January 1994, defendant Satcher maintained an outstanding balance with defendant Weyerhauser stemming from previous pur-

chases of wooden boxes necessary to ship Satcher Farms' peaches. Because of this outstanding debt, defendant Weyerhauser would no longer allow defendant Satcher to purchase boxes on credit. Plaintiff then agreed to purchase boxes for defendant Satcher and recover the additional advance over the course of the contract. This arrangement allowed defendant Satcher to directly call defendant Weyerhauser's North Carolina production facility and order needed boxes, the invoice for which would be sent directly to plaintiff by defendant Weyerhauser.

During the course of performance of the contract, a dispute developed between the parties regarding the quality of peaches produced by defendant Satcher and the sale price plaintiff was able to obtain for the peaches it sold. Attempts to resolve this dispute resulted in plaintiff travelling to South Carolina to negotiate further with defendant Satcher. These attempts to resolve the problem ultimately failed and on 12 October 1994 plaintiff filed suit in the Superior Court of Wilson County, North Carolina. Defendant Satcher then filed a motion to dismiss pursuant to Rule 12(b)(2) alleging that the Wilson County Superior Court could not statutorily or constitutionally assert personal jurisdiction over him and his business, Satcher Farms. After hearing, the trial court denied defendant Satcher's motion to dismiss.

Defendant appeals.

*Connor, Bunn, Rogerson & Woodard, P.A., by C. Timothy Williford, for plaintiff-appellee.*

*Lee, Reece & Weaver by Cyrus F. Lee and Rachel V. Lee, for defendant-appellant.*

EAGLES, Judge.

The issue before us is whether the trial court erred in denying defendant Satcher's motion to dismiss for lack of personal jurisdiction. Defendant Satcher argues that under these facts the courts of North Carolina cannot assert personal jurisdiction over him consistent with the due process clause of the Fourteenth Amendment to the United States Constitution. We disagree. Because it is based on due process concerns, defendant Satcher's appeal is properly before us pursuant to G.S. 1-277(b). *E.g., Patrum v. Anderson,* 75 N.C. App. 165, 167, 330 S.E.2d 55, 56 (1985).

When determining whether a non-resident defendant is subject to the personal jurisdiction of our courts, we apply a two-pronged analysis. *CFA Medical, Inc. v. Burkhalter*, 95 N.C. App. 391, 393-94, 383 S.E.2d 214, 215 (1989). We must determine first whether the exercise of jurisdiction over the defendant falls within the language of North Carolina's long-arm statute, and second "whether the defendant has sufficient minimum contacts with North Carolina such that the exercise of jurisdiction is consistent with the due process clause of the Fourteenth Amendment to the United States Constitution." *Better Business Forms, Inc. v. Davis*, 120 N.C. App. 498, 500, 462 S.E.2d 832, 833 (1995).

[1] Defendant Satcher first argues that he is not covered by the broad language of G.S. 1-75.4, often referred to as North Carolina's long-arm statute. We disagree. G.S. 1-75.4 establishes the relevant jurisdictional authority here and provides in pertinent part that:

> A court of this State having jurisdiction over the subject matter has jurisdiction over a person . . . under any of the following circumstances:
>
> . . . .
>
> (5) Local Services, Goods or Contracts.—In any action which:
>
>> a. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to perform services within this State or to pay for services to be performed in this State by the plaintiff; or
>>
>> b. Arises out of services actually performed for the plaintiff by the defendant within this State, or services actually performed for the defendant by the plaintiff within this State if such performance within this State was authorized or ratified by the defendant; or
>>
>> c. Arises out of a promise, made anywhere to the plaintiff or to some third party for the plaintiff's benefit, by the defendant to deliver or receive within this State, or to ship from this State goods, documents of title, or other things of value; or
>>
>> d. Relates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction; or

e. Relates to goods, documents of title, or other things of value actually received by the plaintiff in this State from the defendant through a carrier without regard to where delivery to the carrier occurred.

G.S. 1-75.4 (1983 & Supp. 1995). If there is competent evidence in the record to support "a finding which comports with one of the above provisions, jurisdiction will follow under the long-arm statute." *Dataflow Companies v. Hutto*, 114 N.C. App. 209, 212, 441 S.E.2d 580, 582 (1994).

Generally speaking, the language of the long-arm statute is sufficiently broad that the limits of personal jurisdiction are defined by due process rather than by statute. *E.g., Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C 361, 365, 348 S.E.2d 782, 785 (1986). The provisions of G.S. 1-75.4(5) are to be "liberally construed in favor of finding personal jurisdiction, subject only to due process considerations." *Dataflow*, 114 N.C. App. at 212, 441 S.E.2d at 582. Here, we conclude that the due process analysis is indeed controlling because no fewer than three subsections of G.S. 1-75.4(5) are applicable to the facts of this case.

Specifically, defendant Satcher fulfills the requirements of G.S. 1-75.4(5)(a) in that he made "a promise . . . for the plaintiff's benefit . . . to pay for services to be performed in this State by plaintiff . . . ." The promise was the contract between the parties and the services performed were plaintiff's marketing and sale here in North Carolina of defendant's peaches grown in South Carolina. Accordingly, having determined that G.S. 1-75.4(5)(a) is applicable here, we point out in passing that the provisions of G.S. 1-75.4(5)(b) and (d) also would suffice to bring defendant within the reach of our "long-arm" statute.

[2] Turning now to the dispositive question of whether the exercise of jurisdiction comports with due process, we recognize that our State courts may not exercise jurisdiction "unless defendants have had 'certain minimum contacts' with the forum state such that the 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Dataflow*, 114 N.C. App. at 213, 441 S.E.2d at 582 (quoting *Tom Togs, Inc.*, 318 N.C. at 365, 348 S.E.2d at 786). In determining whether the requisite minimum contacts are present, "it is essential that there be some act by which the defendant purposefully availed [himself] of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Cameron-Brown Co. v. Daves*, 83 N.C. App. 281, 285, 350

S.E.2d 111, 114 (1986). It is well settled, however, "that a defendant need not physically enter North Carolina in order for personal jurisdiction to arise." *Better Business Forms,* 120 N.C. App. at 501, 462 S.E.2d at 834.

A contract alone may establish the necessary minimum contacts where it is shown that the contract was voluntarily entered into and has a "substantial connection" with this State. *Tom Togs, Inc.,* 318 N.C. at 367, 348 S.E.2d at 786. When a contract bears a substantial connection to the forum state, a defendant who enters into that contract "can reasonably anticipate being haled into court . . ." in the forum state. *CFA Medical,* 95 N.C. App. at 394-95, 383 S.E.2d at 216 (quoting *World-Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 297, 62 L. Ed. 2d 490, 501 (1980)). Here, the evidence is clear that defendant Satcher's contract with plaintiff bears a "substantial connection" to North Carolina and that defendant Satcher "should not be surprised with being haled into a North Carolina court." *Chapman v. Janko, U.S.A.,* 120 N.C. App. 371 376, 462 S.E.2d 534, 538 (1995).

Defendant Satcher contests this conclusion arguing that the assertion of jurisdiction is improper since plaintiff approached defendant Satcher in South Carolina and then travelled to South Carolina to negotiate the contract. Defendant Satcher's argument, however, would have us consider this factor to the virtual exclusion of all others, and that is not the law. Our analysis is not accomplished by using "a mechanical formula or rule of thumb but by ascertaining what is fair and reasonable under the circumstances." *Better Business Forms,* 120 N.C. App. at 500, 462 S.E.2d at 833.

It is true that plaintiff initiated the original contact in South Carolina with defendant Satcher and secured the original agreement following negotiations taking place entirely in South Carolina. The original contract between the parties provided that plaintiff would have the sole right to market and sell defendant Satcher's peach crop, that plaintiff would receive 8% of the sales price for its efforts, and that plaintiff would advance operating capital to defendant Satcher up to a total of $100,000.00. Were this the only contact, defendant Satcher's due process argument would be considerably more persuasive.

Here, however, the parties made several additional agreements and modifications thereto at defendant Satcher's prompting. On at least three occasions, defendant Satcher contacted plaintiff request-

ing additional sums of money beyond the $100,000.00 promised as part of the original contract. Defendant Satcher also contacted plaintiff to secure assistance in procuring the necessary packaging boxes for the peach crop. Following this contact, plaintiff agreed to pay Weyerhauser to produce the necessary boxes at its plant in North Carolina and to ship them, on defendant Satcher's order, to defendant's farm in South Carolina. Plaintiff even agreed to pay a surcharge on the cost of each box to help retire a debt owed by defendant Satcher to Weyerhauser that was incurred prior to defendant Satcher's original agreement with plaintiff. At its height, defendant Satcher's indebtedness to plaintiff, including that authorized in the original agreement, totalled $292,000.00.

Additional facts relevant in determining the quantity and quality of defendant Satcher's contacts with North Carolina include the following: that defendant Satcher directly contacted Weyerhauser in North Carolina and ordered the necessary boxes; that the parties installed a dedicated phone line to facilitate communication between plaintiff and defendant Satcher; that plaintiff's marketing and sales efforts took place almost entirely in Wilson, North Carolina, and; that, pursuant to the parties' agreement, plaintiff sent a representative to South Carolina to monitor packaging operations, and sent trucks to South Carolina to pick up the peaches.

Based on this evidence, we conclude that defendant Satcher had sufficient minimum contacts to permit this State to exercise personal jurisdiction over him consistent with the due process clause. *E.g., Dataflow*, 114 N.C. App. at 209, 441 S.E.2d at 580; *Chapman*, 120 N.C. App. at 376, 462 S.E.2d at 538. Accordingly, we conclude that the decision of the trial court denying defendant Satcher's motion to dismiss must be affirmed.

Affirmed.

Judges MARTIN, JOHN C., and MARTIN, MARK D., concur.